```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA

CARL DEAN HUDSON,                  )
                                   )
            Plaintiff,             )
                                   )
v.                                 )  Case No. CIV-20-131-RAW-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
            Defendant.             )
```

## REPORT AND RECOMMENDATION

Plaintiff Carl Dean Hudson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 53 years old at the time of the ALJ's decision. Claimant completed his high school education through the twelfth grade. Claimant worked in the past as a gas station attendant and a cabinet assembler. Claimant alleges an inability to work

3

beginning March 15, 2015 due to limitations resulting from osteoarthritis in the back, legs, and hands.

## Procedural History

On January 25, 2017, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On February 4, 2019, Administrative Law Judge ("ALJ") Jeffrey Wolfe conducted an administrative hearing by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding in Tulsa, Oklahoma. On February 27, 2019, the ALJ issued an unfavorable decision. On March 2, 2020, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform light work with limitations.

4

**Error Alleged for Review**

Claimant asserts the ALJ committed error in failing to properly evaluate and consider Claimant's statements of limitation.

**Credibility Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of edema and stasis dermatitis of the legs, chronic obstructive pulmonary disease ("COPD"), osteoarthritis of the hands, back, and knee, hypertension, major depressive disorder, and generalized anxiety disorder. (Tr. 14-15). The ALJ concluded that Claimant retained the RFC to perform light work. In so doing, he determined that Claimant could lift or carry 20 pounds occasionally and ten pounds frequently; could stand and walk six hours in an eight hour workday and sit for six hours in an eight hour workday; should be limited to unskilled work with a specific vocational preparation (SVP) of 1 or 2; no limitation on handling and fingering on his left hand, but was limited to occasional grasping with his right hand, occasionally meaning 1/3 of the workday. Claimant was not found by the ALJ to be limited in reaching. (Tr. 17).

After consulting with a vocational expert, the ALJ concluded

5

Claimant could perform the representative jobs of conveyor line bakery worker, furniture rental clerk, and usher, all of which were found to exist in sufficient numbers in the national economy. (Tr. 28). As a result, the ALJ found Claimant was not disabled from March 15, 2015 through the date of the decision. Id.

Claimant contends that the ALJ failed to properly consider his subjective testimony regarding the need for leg elevation, his difficulty in engaging in prolonged standing and walking, and the need for unscheduled breaks. Claimant testified at the administrative hearing as follows on the issues he raises in this review:

> Q: Do you know when the swelling originally started?
>
> A: I was working, like I said, at Sheetz, at the oil and gas company in Muskogee, and I noticed it, the discoloration on my feet, first, of all things, was that. And then my swelling, it just – I never – if I – when it started to swell, I had to elevate it. I have to elevate it. And, you know, I can't do that with the job I had at Sheetz, you know, 'cause, it's constantly going out and pumping gas; doing a tire; getting up and under vehicles, you know. But that was my job.
>
> * * *
>
> Q: So kind of jumping forward to 2015, the swelling in your legs, was it the same, worse or better, at that point?
>
> A: It just got worse.
>
> Q: And so, since 2015, how often do you typically experience the swelling?

    A:    Every day.

    Q:    Has that been the case, since 2015?

    A:    Yep.

    Q:    Okay.  And how often will you usually end up elevating you legs because of that?

    A:    Well, every time it swells.  I'd have to say, at least, out of – I keep it elevated a couple hours, you know, on tope of the medication that they give me, you know.

    Q:    So you always elevate your legs for a couple hours, during the day?

    A:    Yeah.

    Q:    Okay.  Have you noticed if there's anything that you'll do, that brings on the swelling?

    A:    Yes.  It's like working on hard surfaces, like concrete.  And when I'm standing still, mostly.  Standing still, not doing nothing.  Not doing anything, not even walking or nothing.  And when I walk, it then tends to swell, and I get – I get these stretchy socks, and I'm thinking I'm doing good.  But they don't do no help, you know, and they still swell.  And they hurt, and they sting.  It feels like they're on fire.

    \* \* \*

    Q:    And when you talked about doing yard work, earlier, what type of yard work are we talking about?

    A:     Well, mostly, with a riding lawnmower, and occasional holding a weed eater.  And when I'm on the riding lawnmower – it's like maybe an acre that I'm mowing --- it's going to take me at least a couple hours, you know.  And it really don't take that long.

    Q:    So is it –

    A:    Oh, I have to have rest periods.

7

    Q: Okay. How often will you end up resting, if it –

    A: Well, if – like if I mow this one lady's lawn, it takes – I take, at least, four breaks within the amount of time it should take to mow a lawn. I mean, that big, anyway.

    Q: And how long does it – are you usually, you know, standing and weed eating?

    A: Weed eating, now that's another deal. It'll take me a few hours. 'Cause when I'm standing on my feet – and it gets real tiresome. And I mean, 30 minutes, and I'll go rest for 30 minutes. And I just can't be on my feet that long. I mean, no amount a period of time. And I know it sounds ridiculous.

    (Tr. 48-51).

The ALJ recognized Claimant's testimony on these limitations in his decision, including that he must elevate his legs for a couple of hours a day when they swell and that he has to take breaks. (Tr. 18). The ALJ noted Claimant does yard work, house work, and mows an acre with a riding lawn mower in a couple of hours. Id. (Tr. 49-51).

The ALJ then proceeded through the medical evidence noting Claimant's edema and stasis dermatitis in his legs. (Tr. 20). Claimant was evaluated by Dr. Conner Fullenwider on June 10, 2017 after which he prepared a report. Under the section of the report entitled "Functional Limitations," Dr. Fullenwider noted Claimant's reported limitations in sitting, standing, walking, lifting, and carrying "secondary to pain." He did not report

8

required leg elevation. (Tr. 370). Dr. Fullenwider did not note edema in Claimant's extremities. (Tr. 371). In relation to Claimant's lower extremities, he stated Claimant experienced swelling in the right knee, was able to squat and rise from that position with difficulty, was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table, was able to walk on heels and toes with moderate difficulty, tandem walking was normal and Claimant could stand but not hop on either foot bilaterally. Dr. Fullenwider noted arthritic changes in his right knee. (Tr. 372).

Medical records from Saint Francis Health System in October of 2018 showed normal range of motion. (Tr. 430, 437). They also reflected that Claimant exhibited edema, tenderness, and deformity in the lower legs. (Tr. 437).

Claimant was also attended by a physician's assistant, Stephanie J. Garrett. In May of 2018, she noted normal movement of all extremities with no edema or cyanosis. She found Claimant to have normal gait and station. (Tr. 511). She later provided a medical source statement dated November of 2018. Ms. Garrett estimated Claimant could sit for two hours in an eight hour workday, stand for less than two hours in a workday, required

shifting of positions, take unscheduled breaks 2-3 times per hour for 30 minutes before resuming work (which does not allow for any work under this break schedule since she is estimating one to one and one half hours of breaks per hour), a need to elevate his legs for 2-3 hours per day, and a need to be absent from work more than four days per month. (Tr. 527-29).

The ALJ found Ms. Garrett to not be an acceptable medical source and gave her opinion no weight. He found she based her medical findings on Claimant's subjective complaints and her opinions on postural limitations were without explanation within her medical records. (Tr. 26).

The ALJ largely relied upon the state agency reviewer's opinion in finding Claimant was capable of performing light work. Dr. Larry Ressler relied upon Claimant's statements of his daily activities as well as the medical evidence to reach his conclusions. (Tr. 73-76, 85-88).

Claimant contends the ALJ failed to adequately and accurately evaluate his subjective symptoms.[2] It is well-established that

---

[2] For claims made after March 27, 2017, Soc. Sec. R. 96-7p was replaced by Soc. Sec. R. 16-3p in evaluating a claimant's subjective symptoms. Claimant's claim was made on January 25, 2017 so the older standard applies. Both rulings rely upon the same factors in evaluating a claimant's subjective assertions as to the effect of their condition. The new ruling only makes clear that it is not

"findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc.

---

reflecting upon a claimant's character, thus eliminating the term "credibility".

11

Sec. R. 16-3p, 2016 WL 1119029, at *7.

The ALJ relied upon appropriate factors in evaluating Claimant's subjective statements of his symptoms. Despite Claimant's protestations to the contrary, the ALJ did acknowledge that Claimant stated he required leg elevation. (Tr. 18). The nature of Claimant's treatment, the objective medical testing, the functional opinions of the state agency reviewer and the consulting examiner, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's subjective statements. The ALJ's analysis was entirely appropriate.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude

appellate review of this decision by the District Court based on such findings.

DATED this 14th day of September, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

13